# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| MARK CHARLTON-PERKINS<br>7015 Hearne Road<br>Cincinnati, OH 45248 | : <br> : <br> : | Case No.: 1:20-cv-179 <br><br> Judge Timothy S. Black |
| Plaintiff, | : <br> : <br> : | |
| vs. | : <br> : | |
| UNIVERSITY OF CINCINNATI<br>2600 Clifton Ave.<br>Cincinnati, OH 45220 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| KENNETH PETRON<br>In his official and individual<br>Capacities<br>2600 Clifton Ave.<br>Cincinnati, OH 45220 | : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| GEORGE UETZ<br>In his official and individual<br>Capacities<br>2600 Clifton Ave.<br>Cincinnati, OH 45220 | : <br> : <br> : <br> : <br> : <br> : | |
| Defendants. | : | |

_____

## AMENDED COMPLAINT AND JURY DEMAND
_____

Plaintiff, Mark Charlton-Perkins, for his First Amended Complaint against Defendants, the University of Cincinnati, Kenneth Petron, and George Uetz, states as follows:

## I.  PRELIMINARY STATEMENT

1. Plaintiff, Mark Charlton-Perkins, Ph.D., is a male biological research scientist who is employed at the University of Cambridge in the United Kingdom.  In or about 2017, Dr. Charlton-Perkins applied for an assistant professorship in the Biological Sciences Department at the University of Cincinnati.

2.  Following a search to fill the position, the chair of the search committee, as well as the majority of that committee, recommended that Dr. Charlton-Perkins be the candidate selected to fill the post.

3. Rather than accept the recommendation of the search committee in accordance with established institutional rules and practices, Defendants rejected the recommendation and directed the search committee to reconvene and to focus instead on "the women candidates."

4. Following a protest of this directive by the search committee chair, Defendants cancelled the search in its entirety.  As a result, Dr. Charlton-Perkins was denied the opportunity to be appointed to an academic position at a public institution solely on account of his gender.

5. The background circumstances of Defendants' decision to reject Dr. Charlton-Perkins in favor of female candidates suggests that the University of discriminates against the majority, in this case male candidates, and is willing to engage in intentional acts of reverse gender discrimination.

6. Dr. Charlton-Perkins has brought this lawsuit pursuant to the 14th Amendment of the United States Constitution, 42 U.S.C. § 1983, as well as Title IX of the Education Amendments of 1972 § 901 *et seq.*, 20 U.S.C. § 1681 *et seq.* which proscribes gender

discrimination against employees and students in educational programs and activities receiving federal financial assistance.

7. Dr. Charlton-Perkins seeks relief in the form of an award of compensatory damages for his economic and non-economic injuries, an award of punitive damages against the individual Defendants, equitable relief in the form of an injunction instating him to the position he was wrongfully denied or, in the alternative, an award of front pay, as well as his costs and reasonable attorney's fees.

## II. JURISDICTION AND VENUE

8. Jurisdiction of the Court is invoked pursuant to 28 USC § 1331 and 1343(a)(3). Federal jurisdiction is appropriate in this instance to secure protections and to redress deprivations of rights conferred by Title IX and 42 USC § 1983.

9. Venue with this Court is appropriate because the acts out of which these claims arose occurred in the Southern District of Ohio.

## III. PARTIES

10. Plaintiff, Dr. Mark Charlton-Perkins, Ph.D. is a United States citizen currently residing in the United Kingdom. He is employed as a Research Associate at the University of Cambridge where he works pursuant to an "exceptional talent" visa.

11. Defendant University of Cincinnati ("UC") is a publicly funded state institution organized under the laws of the State of Ohio. UC receives federal funds to assist in the financial support of its programs and operations.

12. Defendant, Dr. Kenneth Petron is a member of the faculty at UC and at all times relevant hereto held the position of Dean of the McMicken College of Arts and Sciences, an academic unit of UC. Dr. Petron is sued in both his individual and official capacities.

3

13. Defendant Dr. George Uetz at all times relevant hereto was the Chair of the Biological Sciences Department, an academic division within the McMicken College of Arts and Sciences. Dr. Uetz is sued in both his individual and official capacities.

## IV. STATEMENT OF THE CASE

14. In or about September 2017, the Department of Biological Sciences at UC determined that there was a need to appoint an additional researcher to its faculty at the rank of Assistant Professor. To that end, a search committee consisting of four faculty members and one graduate student[1] was placed in charge of the search to fill the position. Dr. Elke Buschbeck, a professor in the Biological Sciences Department, was appointed Chair of the Search Committee.

15. The search committee members proceeded to design, disseminate, and post advertisements for the new position. The search committee also met with appropriate officials to confirm the general procedures to be utilized in conducting the search to ensure that the process complied with established equal employment policies.

16. After the policies were put in place, the search committee received applications from sixty-two candidates. That list was winnowed down to seven candidates who were rated as "strong" and ten candidates who were rated as "particularly strong." That list was further refined to one consisting of nine candidates. Those candidates were invited to participate in Skype interviews with members of the search committee.

17. One of the candidates selected for these interviews was Dr. Charlton-Perkins. Because she had collaborated on projects with Dr. Charlton-Perkins several years in the past, Dr. Buschbeck informed members of the committee of that previous relationship.

---

[1] The graduate student participated in discussions with the committee but was not permitted to vote during the selection process.

She also consulted with Marylin Kershaw, Director of the Office of Diversity and Access and the Superintendent of Graduate Student Recruitment of the McMicken College of Arts and Sciences to determine whether there was or might be an appearance of a conflict of interest ("COI") due to Dr. Buschbeck's position of chair of the search committee and her relationship with one of the candidates. Dr. Kershaw assured Dr. Buschbeck that there was no COI. Accordingly, Dr. Charlton-Perkins continued his candidacy for the position.

18. The search committee was then authorized by Dr. Uetz to invite five finalists for on-campus interviews. One of the candidates (a female) declined the invitation. Consequently, only four candidates were interviewed in person; Dr. Charlton-Perkins, one other male candidate, and two female candidates ("Top Four"). Following the interviews and faculty feedback, the search committee members were asked to rank the Top Four. The ranking provided the basis for further discussion among the committee members. A second male candidate was then eliminated from the list thus leaving only Dr. Charlton-Perkins and the two females in the competition for a determination of who was to be the selected candidate.

19. A final vote of the committee members took place on February 23, 2018. Dr. Charlton-Perkins was rated the favorite by the committee by a vote of three to one. The Collective Bargaining Agreement ("CBA") between the AAUP, on behalf of the faculty, and UC, provided, in pertinent part, that "the appointment of a Faculty Member to an Academic Unit shall normally be based on a recommendation initiated within and approved by the Faculty of that Academic Unit using procedures developed within that Academic Unit" Accordingly, the search committee was vested with the authority to determine the candidate to be selected for the position.

20. On February 26, 2018 Dr. Buschbeck met with Dr. Uetz to inform him of the vote and of the fact that the committee had recommended the hire of Dr. Charlton-Perkins. Dr. Buschbeck also informed Dr. Uetz that the other two candidates (both female), had tied in the rankings. Dr. Uetz then informed Dr. Buschbeck, for the first time, that Dr. Petron had decided to hire two candidates and not solely one as had been originally contemplated.

21. On March 4, 2018 Dr. Uetz explained to members of the search committee that Dr. Petron had recommended that the most appropriate course of action was "to focus on the women candidates first," and that Dr. Petron "feels that he might make a case to hire two strong women candidates." After receiving this message, Dr. Buschbeck responded on March 5, 2018 expressing her view that "[P]utting the two lower ranked candidates up first is not only against the recommendation of the committee but also plain discrimination."

22. On March 5, 2018, Dr. Uetz emailed Dr. Buschbeck and informed her that he considered the search committee as advisory to the Head (a reference to his position as chair of the academic unit) and that "your advise and discussion of the candidates' strengths and weaknesses, along with my own judgment and extensive discussions with the dean, has guided the choice of actions". He further asked Dr. Buschbeck to "understand how difficult this decision has been for me" but that " the dean and I have agreed with the ultimate hiring choices we have made."

23. On March 8, 2018, Dr. Petron met with Dr. Buschbeck and announced that the search had been tainted by reason of her past collaboration with Dr. Charlton-Perkins. Dr. Buschbeck responded by reminding Dr. Petron that her relationship with Dr.

Charlton-Perkins had been disclosed to and vetted by Ms. Kershaw who had given Dr. Buschbeck her approval to proceed with the search.

24. Nonetheless, on March 13, 2018, Dr. Petron proceeded to inform the faculty that he did not think it was possible for the committee to complete an equitable search under these circumstances and, for that reason, was cancelling the search in its entirety.

25. The actions of Defendants Petron and Uetz, taken under color of state law, in not hiring Dr. Charlton-Perkins and cancelling the search were committed intentionally, purposefully, maliciously and in conscious and deliberate disregard for Dr. Charlton-Perkins' right to not be subjected to gender discrimination in connection with an award of a faculty position in a public institution receiving federal funds to support its programs and operations.

26. As a direct and proximate result of these actions, Dr. Charlton-Perkins has suffered the loss of pay and benefits at UC, emotional distress, and injury to his professional reputation.

27. At the time of the aforementioned actions, any reasonable official or supervisor in the academic or administrative positions held by Defendants Uetz and Petron would have known that it was clearly established law in all federal judicial circuits that gender discrimination of any kind, including reverse gender discrimination, committed under color of state law was illegal under federal law and the United States Constitution.

## V.  STATEMENT OF THE CLAIMS

### Count 1 (Discrimination: Title IX)

28. Dr. Charlton-Perkins reiterates and incorporates by reference paragraphs 1-27 herein.

7

29. By refusing to hire Dr. Charlton-Perkins, Defendant UC violated the provisions of Article IX which prohibits discrimination on account of gender by institutions receiving federal financial assistance for the maintenance of its programs and operations.

## Count 2 (Discrimination: Equal Protection Clause)

30. Dr. Charlton-Perkins reiterates and incorporates by reference paragraphs 1-29 herein.

31. By refusing to hire Dr. Charlton-Perkins on account of his gender, Defendants Dr. Uetz and Dr. Petron violated the terms of the Equal Protection Clause of the 14th Amendment of the United States Constitution pursuant to 42 USC § 1983.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Dr. Mark Charlton-Perkins demands judgement against Defendants University of Cincinnati, Dr. Thomas Petron, and Dr. George Uetz, and each of them, jointly and severally, as follows:

1. A judgment for equitable and injunctive relief directing Defendants, their successors and assigns to instate Dr. Charlton-Perkins into an assistant research professorship in the Biological Sciences Department with the pay, benefits, and promotional opportunities he would have received had he not been denied the position to which he was entitled; or, in the alternative, that he be awarded front pay in an appropriate amount to compensate him for his injuries;

2. A judgment for compensatory damages for Dr. Charlton- Perkins economic and non-economic injuries in an amount to be determined at trial;

3. A judgment for punitive damages against the individual defendants in an amount to be determined at trial;

4. A judgment for an award of Plaintiff's reasonable attorney fees and costs;

5. A judgment for such other relief in law or in equity that is appropriate under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
Brian J. Butler (OH No. 0082675)
Daniel J. Treadaway (OH No.0098000)
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
bbutler@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Dr. Charlton-Perkins*

## JURY DEMAND

Plaintiff Dr. Charlton-Perkins demands a jury trial to resolve issues of fact related to his Amended Complaint.

/s/Marc D. Mezibov
Marc D. Mezibov (Ohio No. 0019316)