UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARK CHARLTON-PERKINS, | : | Case No.  1:20-CV-179 |
| PLAINTIFF, | : | Judge Timothy S. Black |
| v. | : | |
| UNIVERSITY OF CINCINNATI, et al., | : | DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT |
| DEFENDANTS. | : | |

Under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Defendants University of Cincinnati ("UC"), Kenneth Petren, PhD ("Dr. Petren"), and George Uetz, PhD ("Dr. Uetz") (collectively "Defendants"; Drs. Petren and Uetz are referred to collectively as the "Individual Defendants") request that the Court dismiss all Plaintiff Mark Charlton-Perkins' claims in his Amended Complaint (Doc. 8).

Plaintiff has filed a failure-to-hire claim against the Defendants despite the fact that UC made no hiring decision on the position Plaintiff sought in UC's Department of Biological Services.  Plaintiff's claims are not ripe, nor has he alleged an essential element of his claims—that he suffered an adverse employment action.  For these reasons, the Court should dismiss both of Plaintiff's claims.

Additionally, Plaintiff's claim under 42 U.S.C. § 1983 against UC[1] and the Individual Defendants in their official capacities is barred by the Eleventh Amendment; the Individual

---

[1] Count II of Plaintiff's Amended Complaint—his Equal Protection claim—appears to only be asserted against the Individual Defendants.  (Doc. 8 at Page ID 37)  But his Prayer for Relief, which appears to request relief pursuant to his Equal Protection claim, seeks relief from all Defendants jointly and severally.  (*Id*. at Page ID 37-38)  In the interest of clarity and caution, Defendants include their argument that Plaintiff's Equal Protection claim against UC is barred by the Eleventh Amendment.

1

Defendants are entitled to qualified immunity; and Plaintiff fails to state a § 1983 claim against Dr. Uetz in his individual capacity.

Lastly, Plaintiff cannot bring a Title IX claim against either of the Individual Defendants[2].

## I. PLAINTIFF'S FACTUAL ALLEGATIONS[3]

In September 2017, UC's Department of Biological Services began a search to add a faculty member to its ranks. (Doc. 8 at Page ID 33) It formed a search committee to the process. (*Id*.) The search committee reviewed prospective applicants and helped refine the list of applicants down to manageable numbers. (*Id*.) That list was eventually pared down to four candidates, one of whom was Plaintiff. (*Id*. at Page ID 34) After interviewing those four candidates, one of the candidates was removed from consideration, leaving Plaintiff and two female candidates. (*Id*.) The search committee then recommended to the Department Chair at that time—Dr. Uetz—that the Department hire Plaintiff. (*Id.*)

After the committee gave its recommendation that the Department hire Plaintiff, Dr. Uetz informed the committee that Dr. Petren—the Dean of the College of Arts and Sciences at that time —advised that the search should focus on the women candidates. (*Id*. at Page ID 35) The chair of the search committee responded by expressing her position that this was against the committee's recommendation and was discriminatory. (*Id*.) A few days later, Dr. Petren discussed with the chair of the search committee that there were other problems with the search,

---

[2] Count I of Plaintiff's Amended Complaint—his Title IX claim—appears to only be asserted against UC. (Doc. 8 at Page ID 37) But, as with his Equal Protection claim, Plaintiff's Prayer for Relief seeks relief for his Title IX claim against all Defendants jointly and severally. (*Id*. at Page ID 37-38) Again, in the interest of clarity and caution, Defendants include their argument that a Title IX claim cannot lie against the Individual Defendants.
[3] Defendants take Plaintiff's factual allegations as true only for purposes of this motion. "However, a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fisher v. Fuyao Glass Am., Inc.*, No. 3:18-CV-405, 2020 WL 59632, at *2 (S.D. Ohio Jan. 6, 2020) (citations omitted).

namely the fact that the chair of the search committee had collaborated with the Plaintiff in the past. (*Id*. at Page ID 35-36) Ultimately, Dr. Petren decided that it was not possible to complete an equitable search under the circumstances and cancelled it. (*Id*. at Page ID 36)

## II.   ANALYSIS

### A.   Plaintiff's Claims Are Not Ripe.

The Constitution limits the power of the federal courts to adjudication of "cases or controversies." U.S. Const. Art. III, § 2. The case or controversy requirement has given rise to numerous doctrines of justiciability. "Justiciability is an analytical approach that has been 'developed to identify appropriate occasions for judicial action, both as a matter of defining the limits of the judicial power created by Article III of the Constitution, and as a matter of justifying refusals to exercise the power even in cases within the reach of Article III.'" *Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142, 1146 (6th Cir. 1975) (quoting 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3529, at 146 (1975)).

"Ripeness is a justiciability doctrine designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Kentucky Press Ass'n, Inc. v. Kentucky,* 454 F.3d 505, 509 (6th Cir. 2006). A claim is not ripe when it relies on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985). "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (citations and internal quotations omitted).

Plaintiff's claims are not ripe. As Plaintiff states in his Complaint, the job search at issue in Plaintiff's Complaint was cancelled. (Doc. 8 at Page ID 31, 36) No one was hired (or has

3

27228916.1

been hired) for the position at issue. It makes no sense that Plaintiff's failure-to-hire claims could be ripe without any hire at all.

Courts have consistently ruled that where an employment decision is not completed, a claim related to that employment decision is not ripe. *See, e.g., Herman v. Ohio Univ.*, No. 2:19-CV-201, 2019 WL 6255711, at *4 (S.D. Ohio Nov. 22, 2019) ("[T]he Court determines that Kalyango's § 1983 tenure due process claims are not ripe. He admits that the de-tenuring process has begun, but is not yet completed."); *Morreim v. Univ. of Tennessee*, No. 12-2891-STA-DKV, 2013 WL 5673619, at *12 (W.D. Tenn. Oct. 17, 2013) (concluding that the plaintiff's constitutional claims based on the possible termination of her tenure were not ripe when the Defendants had not yet revoked the plaintiff's tenure); *Sanchez v. Pub. Bldg. Auth.*, 402 F. Supp. 2d 393, 400 (D.P.R. 2005) ("Negative evaluations are not ripe for adjudication as discrimination violations until they are actually applied against plaintiffs in particular employment decisions."). Plaintiff's claims are not ripe and should be dismissed.

### B. Plaintiff's Claims Fail Because He Has Not Alleged An Adverse Employment Action.

"To bring a successful § 1983 claim under the Fourteenth Amendment's Equal Protection Clause, [a plaintiff] must allege the same elements as are required to establish a disparate treatment claim under Title VII." *Herman*, No. 2019 WL 6242159, at *5 (citations omitted). The same goes for a plaintiff asserting a Title IX claim. *See Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 284 (6th Cir. 2017) (citations omitted). Accordingly, for both of his claims, Plaintiff must adequately allege that: (1) he is a member of protected class; (2) he was qualified for the job; (3) an adverse employment action was taken against him, and (4) he was treated differently than similarly situated non-protected employees. *Id.* (citation omitted). *See Herman*, 2019 WL 6242159, at *5. Additionally, because Plaintiff "is male and seeking to

4

prove reverse discrimination, he 'must demonstrate background circumstances which support the suspicion that the defendant is the rare employer who discriminates against the majority.'" *Hofmann v. Bethesda Found., Inc.*, No. 1:17-CV-143, 2018 WL 4094810, at *11 (S.D. Ohio Aug. 28, 2018) (quoting *Hertenstein v. W.-S. Fin. Grp.*, No. 1:06-CV-273, 2007 WL 4365412, at *6 (S.D. Ohio Dec. 11, 2007)).

Plaintiff has not adequately alleged the *prima facie* elements of his claims. Because the job search at issue was withdrawn and no one has been hired for that position, Plaintiff has not alleged that an adverse employment action was taken against him. In other words, there is no "failure to hire" here because there was no "hire" at all. The Sixth Circuit dealt with a similar issue in *Reeves v. Tennessee Farmers Mut. Ins. Co.*, concluding that the plaintiff could not allege a ripened adverse employment action where in response to a complaint made by the plaintiff, the defendant withdrew a prior offer of employment it made to another applicant and started the hiring process over. 555 F. App'x 509, 511–12 (6th Cir. 2014). The plaintiff argued that because the decision-maker had authority to extend the offer of employment to another applicant, plaintiff's failure-to-hire claim ripened when that offer occurred even though the offer was rescinded since that is when he suffered an adverse employment action. *Id*. The Sixth Circuit rejected that argument, stating that its "inquiry is practical, not metaphysical." *Id*. at 512. In other words, there was no adverse employment action for a failure-to-hire claim until the job search was complete and a hiring decision was actually made.

Other courts throughout the nation have similarly concluded that "there can be no finding of an adverse action if . . . the position was never filled." *Morgan v. Fed. Home Loan Mortg. Corp.*, 172 F. Supp. 2d 98, 112–13 (D.D.C. 2001), *aff'd,* 328 F.3d 647 (D.C. Cir. 2003) (citing *Macellaro v. Goldman,* 643 F.2d 813, 816 (D.C. Cir. 1980) (withdrawal of position that was

5

never filled did not harm plaintiff)); *Terrell v. Paulding Cty.*, 539 F. App'x 929, 933 (11th Cir. 2013) ("Regarding the EO III position for which Ms. Terrell applied, it is undisputed that the County never filled this position. On this record, we agree with the district court's conclusion that Ms. Terrell did not suffer an adverse employment action."); *Abernathy v. S. Star Cent. Gas Pipeline*, No. 12-2144-EFM, 2013 WL 3013573, at *7 (D. Kan. June 17, 2013) ("A plaintiff cannot prove a prima facie case of retaliatory refusal to rehire when the employer eliminates the position applied for and no applicant is hired."); *Thomas v. Wheeler*, No. 05-CV-1447, 2006 WL 8450236, at *4 (E.D. Pa. June 20, 2006), *aff'd*, 295 F. App'x 537 (3d Cir. 2008) ("[T]he position has yet to be filled today, thereby precluding a finding of an adverse employment action."); *Beams v. Norton,* 256 F. Supp. 2d 1203, 1216–17 (D. Kan. 2003) ("Because the vacancy was cancelled and no applicant hired, the plaintiff is unable to prove a prima facie case of discrimination or retaliation.").

Plaintiff has not alleged an Equal Protection claim or a Title IX claim upon which relief could be granted. The Court should dismiss his claims.

### C. Plaintiff's Equal Protection Claim Against UC and the Individual Defendants in Their Official Capacities is Barred by the Eleventh Amendment.

Plaintiff's Equal Protection claim fails against UC and both Individual Defendants in their official capacities under Eleventh Amendment immunity. It "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). The University of Cincinnati is a public university in the State of Ohio. *See* Ohio Rev. Code § 3361.01. The "University [of Cincinnati], as an arm of the State, is immune from suit under the Eleventh Amendment because it is well-

settled that a plaintiff is precluded from directly suing a State in federal court…." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). And a "suit against state officials in their official capacities is not a suit against the officials but rather is a suit against the officials' offices and, thus, is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (syllabus) (1989).

Additionally, while *Ex Parte Young* permits prospective injunctive relief against state actors in their official capacities in certain circumstances, "a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment." *Brown v. Strickland*, No. 2:10-CV-166, 2010 WL 2629878, at *4 (S.D. Ohio June 28, 2010) (citing *Green v. Mansour*, 474 U.S. 64, 67 (1985)). "If a complaint against a state official is 'based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, ... it ... does not come under the doctrine of *Ex parte Young*.'" *Finley v. Murphy,* No. 2:19-CV-01449, 2020 WL 68574, at *3 (S.D. Ohio Jan. 7, 2020) (quoting *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) (dismissing plaintiffs' claim for injunctive relief from state officials after determining their complaint was based entirely on past acts)). All of Plaintiff's assertions of wrongful conduct are targeting past conduct. As Plaintiff admits, the job search at issue was cancelled, so there is no continuing conduct at issue that he is seeking to be stopped. Plaintiff's § 1983 claim seeks retrospective relief, and is barred by the Eleventh Amendment. Plaintiff's claims against UC and both Individual Defendants in their official capacities should be dismissed.

### D. Both Individual Defendants Are Entitled to Qualified Immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

7

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, it is important to resolve immunity issues "at the earliest possible stage in litigation." *Id.* 232.

To determine whether a defendant is entitled to qualified immunity, the Court asks two questions: "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* 231. (citation omitted). "When a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to that defense." *Herman*, 2019 WL 6255711, at *6 (citing *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)).

First, as established above, Plaintiff has failed to state a violation of a constitutional right as he has not alleged the requisite elements to make out a *prima facie* case for his § 1983 claim. Both Individual Defendants are entitled to qualified immunity on this basis alone.

Both Individual Defendants are also entitled to qualified immunity because Plaintiff cannot allege it was "clearly established" that the Individual Defendants were prohibited from cancelling the job search in question. In order to be "clearly established":

> the legal principle [must] clearly prohibit the offic[ial]'s conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. ... [C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too

8

> general if the unlawfulness of the offic[ial]'s conduct does not follow immediately from the conclusion that the rule was firmly established.

*District of Columbia v. Wesby*, 583 U.S. ——, 138 S. Ct. 577, 590 (2018) (quotation marks, editorial marks, and citations omitted). There is nothing "so well defined" about Plaintiff's allegations that would have been clear to either of the Individual Defendants that cancelling the job search in question was unlawful conduct. *C.f., Reeves*, 555 F. App'x at 512 (stating that the defendant's cancelling the job search in question in response to the plaintiff's allegations of discrimination associated with the job search was "exactly what it was supposed to do").

Both Individuals Defendants are entitled to qualified immunity.

### E. Plaintiff Fails to State a § 1983 Claim Against Dr. Uetz in His Individual Capacity.

Further, Plaintiff fails to state a §1983 claim against Dr. Uetz in his individual capacity. It appears that the only additional allegations included in Plaintiff's Amended Complaint are directed at Dr. Uetz. (Doc. 8 at Page ID 35-36) However, even with those additional allegations, Plaintiff fails to state an Equal Protection claim against Dr. Uetz in his individual capacity.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted). In other words, "[p]ersons sued in their individual capacities under § 1983 can be held liable only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun,* 680 F.3d 642, 647 (6th Cir. 2012)*; see also Gibson v. Matthews,* 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the

actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

There are no allegations of wrongful or unconstitutional conduct asserted directly against Dr. Uetz. At most, Plaintiff's additional allegations assert that Dr. Uetz expressed his agreement with the decision not to accept the recommendation to hire Plaintiff. (Doc. 8 at Page ID 35) But Plaintiff's other allegations include that it was Dr. Petren who actually made both that decision a and made the decision to cancel the job search. (*Id.* at Page ID 35-36) Dr. Uetz's involvement in the job search at issue is insufficient to state a claim that he engaged in wrongful or unconstitutional conduct. Plaintiff's § 1983 claim against Dr. Uetz in his individual capacity should be dismissed.

### F. Plaintiff's Title IX Claim Fails Against Both Individual Defendants.

To the extent that Plaintiff is asserting his Title IX claim against either Individual Defendant, that claim fails. There is no individual liability under Title IX. *See Condiff v. Hart Cnty. Sch. Dist.*, 770 F. Supp. 2d 876, 881 (W.D. Ky. 2011) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 641 (1999) ("The Government's enforcement power may only be exercised against the funding recipient ... and we have not extended damages liability under Title IX to parties outside the scope of this power.")).

### III. CONCLUSION

For all these reasons, Defendants request that this Court dismiss all claims alleged against them under Federal Rule of Civil Procedure 12.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

By: /s/ Brian G. Dershaw
Brian G. Dershaw (0072589)
Evan T. Priestle (0089889)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Tel: (513) 381-2838
Fax: (513) 381-0205
bdershaw@taftlaw.com
epriestle@taftlaw.com

*Attorneys for Defendants
University of Cincinnati, Kenneth
Petren, and George Uetz*

27228916.1

## CERTIFICATE OF SERVICE

I certify that on May 21, 2020, I filed Defendants' Motion to Dismiss Plaintiff's Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered parties.

/s/  Brian G. Dershaw