UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MARK CHARLTON-PERKINS** | : | Case No.: 1:20-cv-179 |
| | : | |
| Plaintiff, | : | Judge Black |
| | : | |
| vs. | : | |
| | : | |
| **UNIVERSITY OF CINCINNATI,** et al., | : | |
| | : | |
| Defendants. | : | |

_____

**MEMORANDUM IN OPPOSITION TO DEFENDANTS UNIVERSITY OF CINCINNATI, KENNETH PETRON, AND GEORGE UETZ'S MOTION TO DISMISS**
_____

**I.    INTRODUCTION**

Plaintiff, Dr. Mark Charlton-Perkins, has alleged that he was denied an open and advertised position for a newly created assistant professorship in the Biological Sciences Department of the University of Cincinnati ("UC") because two administrative officials in that department, Dr. Kenneth Petron and Dr. George Uetz, refused to hire him in order to fill the position with one or more female candidates.

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Dr. Charlton-Perkins' complaint on various grounds including, most prominently, that his claims for discrimination are not ripe for adjudication and that, in any event, he has failed to allege that he was the victim of a cognizable adverse employment action.  In essence, Defendants have posited the dubious notion that even if they did refuse to hire Dr. Charlton-Perkins because of his gender, they are entitled to a free pass because they

subsequently cancelled the search process in order to avoid liability for committing a blatant act of reverse gender discrimination.

As the following discussion demonstrates, the ripeness defense fails because the complaint does not raise an abstract dispute or rely on contingent events which are the hallmarks of cases not ripe for adjudication. The defense of lack of an adverse employment action similarly fails. Dr. Charlton-Perkins alleges that even though he was an external and fully qualified candidate for an open and advertised position and was recommended for hire by the duly constituted search committee, Defendants rejected the recommendation and passed on him due to considerations of gender. If true, these allegations constitute a material adverse employment action under prevailing law.

## II. ARGUMENT

### A. Standard of Review

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010), quoting *J.P. Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577,581 (6th Cir. 2010).

In accordance with the standard governing analysis of motions to dismiss under Fed. R. Civ. P. 12(b), the Court must accept as true the following assertions of fact:

1) That in September 2017, a search committee was formed for the purpose of selecting a candidate to fill the newly created assistant professorship in the Biological Sciences Department at UC. Professor Elke Buschbeck was appointed chair of the committee. (Doc. 8, PageID# 33);

2) The search committee designed, disseminated, and posted advertisements for the new position. The search committee also met with appropriate officials at UC to confirm that the hiring process complied with established equal employment policies. (*Id.*);

2

3) That pursuant to provisions in the collective bargaining agreement between the American Association of University Professors on behalf of the faculty and UC, the search committee was vested with the authority to determine the candidate to be selected for the position. (*Id.* at PageID# 34);

4) On February 26, 2018, Dr. Buschbeck met with Dr. Uetz to inform him of the vote and that the committee had recommended the hire of Dr. Charlton-Perkins. She also advised Dr. Uetz that the two remaining candidates, both female, had tied in the rankings behind Dr. Charlton-Perkins. Dr. Uetz then informed Dr. Buschbeck, for the first time, that Dr. Petron had decided to hire two candidates and not solely one as had been originally contemplated. (*Id.* at PageID# 35);

5) That on March 4 2018, Dr. Uetz explained to members of the search committee that Dr. Petron had recommended that the most appropriate course of action was "to focus on the women candidates first" and that he "feels that he might make the case to hire two strong women candidates." Dr. Buschbeck responded on March 5, 2018 that "[P]utting the two lower ranked candidates up front is not only against the recommendation of the committee, but also plain discrimination." (*Id.*);

6) On March 6, 2018 Defendant Petron announced that the search was being cancelled in its entirety. (*Id.* at PageID# 35-36).

**B. Ripeness**

"The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States,* 532 F.3d 521, 525 (6th Cir. 2008). Three factors guide the court's ripeness inquiry: (1) the likelihood that the harms alleged by Plaintiff will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if justiciability is denied at this stage of the proceedings. *Barry v. Schmitt,* 688 F.3d 290, 298 (6th Cir. 2012). In this Circuit, the issue of ripeness in the context of employment related disputes is "essentially a question of timing" and advises "against resolving a case that is anchored in future events that may

3

not occur as anticipated, or at all." *Nat'l Rifle Assoc. of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir. 1997).

Defendants contend that Dr. Charlton-Perkin's claims are not ripe because the job search was cancelled, and no one was hired. According to their reasoning, "[I]t makes no sense that Plaintiff's failure to hire claim could be ripe without any hire at all." (Doc. 9, PageID# 43). Hence Dr. Charlton-Perkins' claims should be dismissed because they are premature. In support of their position, Defendants rely on a trio of cases, none of which have application to the facts at hand.

First, Defendants point to *Herman v. Ohio Univ.,* No. 2:19-cv-201, 2019 WL 6255711 (S.D. Ohio Nov. 22, 2019). In *Herman*, college administrators were sued by a graduate student for various claims relating to sex discrimination and retaliation. *Id.* at *1. One of the defendant administrators, Dr. Kalyango, filed a third-party complaint alleging that some of the administrators violated his constitutional rights by seeking to strip him of his tenure without due process. *Id.* at *2. The third-party defendants moved to dismiss this third-party complaint on the grounds of ripeness. *Id.* at *3. The *Herman* court agreed that the claims of Dr. Kalyango should be dismissed because although the termination process had commenced, it had not yet concluded and at that point Dr. Kalyango was still employed as a tenured professor. *Id.* According to the court, "[A] claim is not ripe for judicial review when "there is no certainty whether the challenged conduct will occur in the future." *Id.* at *3-4, quoting *Warshak,* 532 F.3d at 525.

Here, of course, Dr. Charlton-Perkins' complaint does not rely on the occurrence of future events. He had already suffered a discrete and completed act of discrimination when Defendants refused to accept the recommendation of the search committee and

4

failed to hire him on account of his gender. Dr. Charlton-Perkins' claim of discrimination is not contingent upon future events. *Herman,* therefore, is entirely inapposite.

The second case, *Morreim v. The Univ. of Tennessee,* No. 12-2891, 2013 WL 5673619 (W.D. Tenn. Oct. 17, 2013) is similar in its facts to *Herman*. Dr. Morreim was a professor who feared that her tenure would be revoked and for that reason filed constitutional claims against her public employer. *Id.* at *6. In response, the university argued, among other things, that no taking of a property interest had occurred and that Dr. Morreim was still employed as a tenured professor with full salary. *Id.* at *7. On these facts the court determined that the professor's claim was not ripe for adjudication. *Id.* at *12. These facts, as those in *Herman,* are far afield from those alleged by Dr. Charlton-Perkins. There is no uncertainty that Dr. Charlton-Perkins will not be hired as a result of the search process which was cancelled in March of 2018.

The third case, *Sanchez v. Public Building Authority,* 402 F.Supp.2d 393 (D.P.R. 2005), involves a claim that an employer was building a case against the plaintiff by downgrading his performance in order to fire him sometime down the road. *Id.* at 400. The court dismissed the case on the grounds that a claim of an anticipated termination based on negative evaluations is not ripe for adjudication as a stand-alone discrimination claim until they are actually applied against a plaintiff in particular employment decisions. *Id.* In other words, anticipating bad news is not equivalent to receiving bad news. Dr. Charlton-Perkins was the recipient of bad news when he was informed that Defendants had refused to follow the recommendation of the search committee and had decided to pass him over for female candidates. Clearly, *Sanchez* does nothing to advance Defendants' cause.

5

Here, the complaint alleges a set of facts, which when assumed to be true, establish that Defendants failed to hire Dr. Charlton-Perkins despite the recommendation of the appointed search committee because they wanted to hire a woman, not a man. Then, to add insult to injury, following an objection to this process by the search committee chair that Defendants' actions were not only irregular but plain discrimination, Defendants' suddenly cancelled the search in its entirety.

There was nothing abstract about the nature of the controversy articulated in the complaint. Nor has Dr. Charlton-Perkins presented issues, the resolution of which are contingent upon future or uncertain events. Plainly and simply stated, Dr. Charlton-Perkins has alleged that he suffered a cognizable injury causing him financial, emotional, and reputational harms. In short, the doctrine of ripeness has no resonance in the circumstances of this case.

**C. Adverse Employment Action**

In support of the absence of an adverse action theory, Defendants argue that Dr. Charlton-Perkins' claim of discrimination is hollow because the faculty position he was seeking was never filled. (Doc. 9, PageID# 44). According to this theory, no adverse employment action can occur until a job search is completed and a hiring decision made. However, Defendants' theory of the case is superficial and upon closer analysis is not supported by the array of cases upon which they rely. Moreover, their cramped and narrow reading of the adverse action prong of the *McDonnell Douglas* formulation (third prong) is inconsistent with the remedial purpose the Supreme Court articulated for the evaluation of discrimination cases. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

6

As a starting point of this discussion, it is important to recognize that the Supreme Court has emphasized that the elements necessary for a *prima facie* case of discrimination are not inflexible. Rather, "[the] facts necessarily will vary in Title VII cases, and the satisfaction (of the four elements) of the *prima facie* proof required…is not necessarily applicable in every respect in different factual situations." *McDonnell Douglas,* 411 U.S. at 802 n.13. The Supreme Court later reaffirmed that view stating that "[t]he *prima facie* case method established in *McDonnell* was 'never intended to be rigid, mechanized, or ritualistic.' Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on critical question of discrimination." *U.S. Postal Serv. Bd. of Governors v. Akins,* 460 U.S. 711, 715 (1983) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 572 (1978). The Supreme Court went even further in explaining that a *prima facie* case is generally satisfied upon a showing of "action taken by the employer from which one can infer, if such action remains unexplained, that it is more likely than not that such action was based on a discrimination criteria illegal under the Act." *Furnco,* 438 U.S. at 576. The Sixth Circuit's takeaway from *McDonnell Douglas* is that the "central inquiry in evaluating whether the plaintiff has established his initial burden is whether it is sufficient to create and inference [of discrimination]." *Shah v. Gen. Elec. Co.,* 816 F.2d 264, 268 (6th Cir. 1987). Here, there can be no serious doubt that the facts alleged by Dr. Charlton-Perkins create an inference of discrimination. The case authorities cited by Defendants are clearly distinguishable from these facts and when individually considered do nothing to dispel that inference.

The primary case advanced by Defendants in support of its defense is *Reeves v. Tennessee Farmers Mut. Ins. Co.,* 555 Fed. Appx. 509 (6th Cir 2014). The facts in *Reeves* are simple. In *Reeves,* a female employee was denied a promotion by her supervisor who

7

hired a man. *Id.* at 509-510. After the supervisor told Reeves that he would not hire any female for the job, she immediately raised the issue of discrimination with the higher ups in the company. *Id.* at 510. Within mere hours of these events, the employer rescinded the job offer to the man and reopened the hiring process. *Id.* Reeves was not hired but another female was. *Id.* The Court affirmed dismissal of her action because the company's offer to the male did not constitute an adverse employment action against Reeves. *Id.* at 512. It reasoned that the offer "did not effect significant change in anyone's employment status because as it turned out (almost immediately, in fact) [the male] was never hired for the job." *Id.* at 511-512. The Court explained that its inquiry was a "practical" one and not "metaphysical" in nature. *Id* at 512. Indeed, once the employer found out about the supervisor's attempted discrimination, "it did exactly what it was supposed to do." *Id.*

The facts in *Reeves* hardly compare to those alleged in Dr. Charlton-Perkins' complaint. Within hours of her complaint of gender discrimination, the company corrected course and saw to it that Reeves was able to participate on an even playing field with the other male and female candidates. Not so here. After refusing to hire Dr. Charlton-Perkins, the individual Defendants openly announced their preference for the other candidates, identifying them not by name but by gender. And, rather than "do[ing] what it was supposed to do," UC cancelled the search ensuring that Dr. Charlton-Perkins would never be hired for the specific position. One need not be a metaphysician to recognize that what Defendants did to Dr. Charlton-Perkins when they refused to hire him was an adverse employment action.

None of the remaining cases cited by Defendants involve facts similar to those presented in this case. For example, in *Morgan v. Fed. Home Loan Mortg. Corp.,* 172 F.

8

Supp. 2d. 98, 106 (D.D.C. 2001), the plaintiff claims that he suffered an adverse employment action was rejected because the positions for which he applied were not vacant. Simply stated, the absence of a vacancy alone defeated the plaintiff's claim. *Id.* at 112. In contrast, Dr. Charlton-Perkins was denied a position that was newly created and available until the search committee recommended his hire. Similarly, in the case of *Macellaro v. Goldman,* 643 F.2d 813, 814 (D.C. Cir. 1980), the plaintiff, a research engineer who lost his position in a reduction of force, filed an age discrimination claim arguing that he suffered an adverse employment action because a posted position to which he had applied had been withdrawn. *Id.* The court emphasized that he was treated no better or worse than any other individual who was interested in the position. *Id.* at 816. In other words, no harm no foul.

But again, the same cannot be said about the harm suffered by Dr. Charlton-Perkins. He was personally denied a vacant position because of his gender. There are no facts in *Macellaro* to suggest, as there are here, that the cancellation of the vacancy was attributable to discriminatory motives.

The same reasoning applies to *Terrell v. Paulding Cty.,* 539 Fed. App'x 929 (11th Cir. 2013). In *Terrell,* a county employee contended she was passed over for a promotion in retaliation for complaining of discrimination and a hostile work environment. *Id.* at 933-934. The court rejected this claim because it was undisputed that the position was never filled by anyone. *Id.* Consistent with the previous cases mentioned, Ms. Terrell could provide no facts supporting the proposition that the position was not filled for discriminatory or retaliatory reasons.

The next case, *Abernathy v. South Star Cent. Gas Pipeline,* No. 12-2144, 2013 WL 3013573 (D. Kan. June 17, 2013) is also not on point. There the plaintiff worked for the

9

employer as an independent contractor land representative. *Id.* at *1. He had been disciplined for various infractions prior to being terminated as part of a reorganization and reduction in force. *Id.* After learning that a coworker had recently retired, Abernathy inquired if he could fill the vacancy. *Id.* at *4. However, the company had not posted the vacancy and hired no land representative following Abernathy's termination. *Id.* The court denied the claim of retaliation finding that Abernathy had not suffered an adverse employment action because a retaliatory refusal to hire applies only when a plaintiff applied and was qualified for a job for which the defendant was seeking applicants. *Id.* at *7. The plaintiff in *Abernathy* could not satisfy any of these conditions; Dr. Charlton-Perkins satisfies each of them. *Abernathy*, therefore, is not helpful to Defendants.

*Thomas v. Wheeler,* No. 05-CV-1447, 2006 WL 8450236 (E.D. Pa. June 20, 2006) repeats this similar theme. There, a federal employee filed a failure to promote charge. *Id.* at *3. However, the promotional opportunity was transferred to another unit and was reclassified to a position for which the plaintiff was ineligible so he suffered no discrimination whatsoever. *Id.* In stark contrast, Dr. Charlton-Perkins applied for a vacant spot for which he was eminently qualified and denied the position under circumstances strongly suggestive of reverse gender bias. Thomas could hardly make such an argument.

The final case upon which Defendants rely is *Beams v. Norton,* 256 F. Supp. 2d 1203 (D. Kan. 2003). There, a former employee alleged that a federal agency refused to reemploy him for discriminatory or retaliatory reasons on six separate occasions after he resigned. *Id.* at 1205. The court reviewed each of the claims and considered the common thread running through all of them that the employer eliminated the positions as a means of discrimination. *Id.* at 1214.

10

The court then emphasized that the *prima facie* standard is amenable to modification in discrimination claims to allow for different circumstances. *Id.* As an illustration of that point, the court pointedly noted that a modified *prima facie* standard is appropriate for a reverse discrimination claim because there is no presumed discrimination against historically favored litigants who have sustained an adverse employment action. *Id.* The point is that the p*rima facie* case should be adaptable to link the allegations to an inference of discrimination. In other words, "[T]he *prima facie* case raises a rebuttable presumption of unlawful discrimination, where there is 'a logical connection between each element of the *prima facie* case and the inference of discrimination'". *Id.* at 1213, quoting *Penny v. Woodward,* 199 F.3d 1126, 1135, 1136 (10th Cir. 1999). While these facts were not present in *Beams,* they are here. The discussion in *Beams* of the sufficiency of a *prima facie* case is perfectly consistent with and supportive of Dr. Charlton-Perkins claims of reverse discrimination against Defendants.

Dr. Charlton-Perkins' complaint sets forth allegations that, if true, allow for an inference of discrimination even though the search was cancelled. As alleged in the amended complaint, the individual defendants disregarded provisions of the CBA that accorded deference to the selection made by the search committee. The amended complaint further states that once the committee's choice of the male candidate was revealed the individual defendants announced, out of the blue, their desire to hire two and not merely one candidate as was originally contemplated. Defendants also expressed their preference that a female(s) be selected to fill the open professorship. After Dr. Buschbeck protested this change in process as well as defendants apparent bias in favor of the female candidates, Dr. Petron suddenly announced that the search had been tainted by reason of past collaboration between Dr. Buschbeck and Dr. Charlton-Perkins. It was

11

only when Dr. Buschbeck reminded Dr. Petron that her relationship with Dr. Charlton-Perkins had been disclosed to and vetted by the appropriate university official, that Dr. Petron informed the faculty that the search was being cancelled in its entirety. (Doc. 1 ¶ 22 and 23). All the while, Defendants openly declared their preference for female candidates. In these circumstances, it does not take a detective to find an inference of discrimination amidst this trove of evidence.

This argument is consistent with the proposition adopted in this judicial circuit that the term "adverse employment action" is a placeholder phrase for an employment action which "when taken in context, gives rise to an inference of discrimination." *Freemen v. Potter,* 200 Fed. App'x 439, 451 n.6. Flexibility in a *prima facie* case is especially necessary in a discrimination case as this one where "the failure to get the job is the *sine quo non* in the hiring context." *Id.* Because Defendants decided, for questionable motives, to cancel the search did not make Dr. Charlton-Perkins' failure to get the professorship any less adverse than it would be if they had hired one of the less highly ranked females instead. In any and all events, Dr. Charlton-Perkins did not get the job.

### D. Eleventh Amendment Immunity

Defendants challenge the viability of Dr. Charlton Perkins' claims against the individual defendants in their official capacities on the ground of Eleventh Amendment immunity. Dr. Charlton-Perkins concedes that a suit against individuals in their official capacities constitutes a suit against the officials' offices and not the individuals personally. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to Eleventh Amendment immunity of claims for injunctive relief against state officials in their official

12

capacities. In order to qualify for an exception under *Ex parte Young*, an action must seek prospective injunctive relief to end a continuing violation of federal law. *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002), citing *McDonald v. Village of Northport Michigan,* 164 F.3d 964, 970-972 (6th Cir. 1999).

Defendants assert that Dr. Charlton-Perkins' claims "targets past conduct" and, therefore, is not appropriate for an exemption from Eleventh Amendment immunity. According to Defendants, since the job search was cancelled, there is no continuing unconstitutional or illegal conduct to be stopped. (Doc. 9, PageID# 46). This argument is unavailing in this case. In this Circuit, "claims for reinstatement to a job position are prospective in nature and an appropriate subject for *Ex parte Young* action." *Diaz v. Michigan Dep't of Corr.,* 709 F.3d 956, 964 (6th Cir. 2013). Defendants' argument ignores the fact that since the date he was denied the assistant professorship due to his gender, Dr. Charlton-Perkins has been subject to an ongoing violation of his federal rights to be free from discrimination of any kind. Indeed, claims for reinstatement, such as this, state a violation that continues during the period the plaintiff is excluded from the benefits to which he is entitled. *Carten,* 282 F.3d at 396, citing *Elliot v. Hinds,* 786 F.2d 298, 301 (7th Cir. 1986).

In these circumstances, Dr. Charlton-Perkins' claims for injunctive relief instating him to the position which he was wrongfully denied is overwhelming prospective in nature. *Ex parte Young* has clear application in this instance.

### E. Qualified Immunity

Defendants advance two theories in support of their argument that Dr. Charlton-Perkins' claims against the individual defendants are barred by virtue of the doctrine of qualified immunity. Neither theory has application in this instance.

First, Defendants claim that Dr. Charlton-Perkins has failed to establish a *prima facie* case of discrimination ostensibly because he did not suffer an adverse employment action. For the reasons provided previously in this memorandum, this argument is without substance. Assuming Dr. Charlton-Perkins' allegations of fact are true, he was denied an opportunity to be hired for an open and available university position for which he was the most qualified candidate solely on account of his gender.

Second, Defendants contend that even if Dr. Charlton-Perkins has demonstrated a *prima facie* case of discrimination, he "cannot allege that it was 'clearly established' that Individual Defendants (sic) were prohibited from cancelling the job search in question." (Doc. 9, PageID# 47). The premise underlying defendants' argument is flawed. Dr. Charlton-Perkins is not alleging that it was clearly established that cancelling a job search constitutes a stand-alone act of discrimination. More precisely, he is alleging that despite the recommendation of the officially constituted search committee defendants refused to hire him because of his gender. (*See* Doc. 8, PageID# 35-36). The issue, therefore, is not whether it was clearly established that cancelling a search constitutes an act of discrimination but whether it was clearly established law that refusing to hire an individual on account of his gender gives rise to a discrete act of employment discrimination.

The citations for this proposition of law are legion. And, the case law in this Circuit is also well settled that reverse gender discrimination is unlawful. *See, e.g. Pierce v. Commonwealth Life Insurance Co.,* 40 F.2d 796, 801-802 (6th Cir. 1994) (citing to the *McDonnell Douglas* standard to accommodate reverse gender discrimination cases); *Leadbetter v. Gilley,* 385 F.3d 683, 690 (6th Cir. 2004) (discussing the four prong test

needed to establish a case of reverse gender discrimination); *see also Southerland v. Michigan Dep't of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003).

No doubt the act of cancelling the search was incidental to Defendants' refusal to hire Dr. Charlton-Perkins. Nonetheless, it was a temporally distinct act. According to the allegations in the amended complaint, the individual defendants refused to accept the recommendation of the search committee on February 26, 2018. (Doc. 8, PageID# 35). And it was not until March 13, 2018 that Dr. Petron announced the cancellation of the search. (Doc. 8, PageID# 36). In this circumstance, Defendants' decision to cancel the search was akin to hammering the proverbial final nail into the lid of a coffin. Like the occupant of that coffin, Dr. Charlton-Perkins' prospects for hire into the assistant professorship had already passed from this life.

In sum, it cannot seriously be argued that the individual defendants were not aware that it was clearly established that the failure to hire a qualified candidate for a posted and available position on account of the candidate's gender. It necessarily follows that the individual defendants are not protected from either a suit or from liability by virtue of the doctrine of qualified immunity.

### F. The § 1983 Claim against Dr. Uetz

The gist of Defendants' § 1983 defense is that Dr. Charlton-Perkins has failed to allege with sufficient particularity that Dr. Uetz personally committed unconstitutional or discriminatory acts against him. According to Defendants, "[T]here are no allegations of wrongful or unconstitutional conduct asserted directly against Dr. Uetz." (Doc. 9, PageID# 49).

Defendants' argument is belied by the allegations in the amended complaint which, among other things, assert that Dr. Uetz flatly admitted to his participation with

15

Dr. Petron in the very acts which have been challenged by Dr. Charlton-Perkins as discriminatory. More particularly, Dr. Charlton-Perkins has alleged that Dr. Uetz expressly stated to Dr. Buschbeck that "…with *my own judgment* and extensive discussions with the dean, has guided the chain of acts." (Doc. 8, PageID# 35) (emphasis added). He further bemoaned to Dr. Buschbeck how difficult the hiring choices had been for him but that in the end he and the dean "*have agreed with the ultimate hiring choices we made.*" *Id.* (emphasis added).

In situations where there may be more than one individual responsible for the offending acts, "each defendant's liability must be assessed individually based on his (or her) own actions." *Pollard v. City of Columbus,* 780 F.3d 395, 402 (6th Cir. 2015). Moreover, an official may be held liable for injuries sustained by an employee as a result of a discriminatory employment action depending on the nature and extent of the official's participation in the action. *See Ward v. Athens City Bd. of Educ.,* 187 F.3d 639, 1999 WL 623730, at *8 (6th Cir. 1999) ("An influential recommender can be liable under § 1983 without being the final decision maker, if the recommendations are shown to be sufficiently influential"). Dr. Uetz's admissions to Dr. Buschbeck as alleged in the amended complaint are sufficient to hold him individually accountable for the decision not to hire Dr. Charlton-Perkins whether as a final decision maker or as an influential advisor.

In light of the allegations directed at Dr. Uetz, it is difficult to credit Defendants' argument that Dr. Uetz was no more than a wingman. In fact, according to the allegations in the amended complaint, Dr. Uetz shared the pilot's cockpit when the decision was made not to accept the recommendation of the search committee that Dr. Charlton-Perkins be hired and later when the decision was made to cancel the search in its entirety. Fairly

16

read, the amended complaint assigns, at minimum, shared responsibility to Dr. Uetz for the discrimination suffered by Dr. Charlton-Perkins.

### G. Title IX Claims

Dr. Charlton-Perkins does not dispute that his claim under Title IX is not viable against the individual defendants. For these reasons he is not responding to Defendants' argument on this point.

### III. CONCLUSION

For all the forgoing reasons, Dr. Charlton-Perkins respectfully submits that the Motion to Dismiss Plaintiff's Amended Complaint is not well taken and should be denied.

Respectfully submitted,

MEZIBOV BUTLER

/s/Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
Brian J. Butler (OH No. 0082675)
Daniel J. Treadaway (OH No.0098000)
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
bbutler@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Dr. Charlton-Perkins*

## **CERTIFICATE OF SERVICE**

      A true and accurate copy of the foregoing was served to all parties of record via the Court's ECF filing system this 2nd day of June, 2020.

                                             */s/ Marc D. Mezibov*
                                             Marc D. Mezibov (No. 0019316)