UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARK CHARLTON-PERKINS, | Case No. 1:20-CV-179 |
| PLAINTIFF, | Judge Timothy S. Black |
| v. | |
| UNIVERSITY OF CINCINNATI, et al., | REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT |
| DEFENDANTS. | |

Defendants University of Cincinnati ("UC"), Kenneth Petren, PhD ("Dr. Petren"), and George Uetz, PhD ("Dr. Uetz") (collectively "Defendants"; Drs. Petren and Uetz are referred to collectively as the "Individual Defendants") submit the following reply brief in support of their Motion to Dismiss Plaintiff Mark Charlton-Perkins' Amended Complaint.

Plaintiff is correct that Defendants' primary arguments are two-fold: (1) Plaintiff's failure-to-hire claims under 42 U.S.C. § 1983 and Title IX are not ripe as the position Plaintiff sought has not been filled; and (2) Plaintiff has failed to allege that he suffered an adverse employment action, which is of course another way of stating that he has alleged no cognizable harm. Plaintiff offers *no* case law analogous to his situation that supports his arguments opposing Defendants' motion. That fact alone (especially when compared to the many supporting cases cited in Defendants' motion) is telling. And while Plaintiff attempts to distinguish the cases cited in Defendants' motion, those attempts are unsuccessful.

Simply stated, when a plaintiff seeks a specific position and there is no decision made about whom to hire for that position, a plaintiff's claim of entitlement to that position is "anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Assoc. of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir. 1997). Similarly, as confirmed by the Sixth Circuit and

1

several other courts throughout the nation, when a plaintiff's alleged harm is the defendant's failure to hire him, that plaintiff cannot allege a cognizable harm (*i.e.*, an adverse employment action) when the defendant has not filled the position in question.

Defendants' alternative arguments should also result in dismissal of Plaintiff's 42 U.S.C. § 1983 claim. Plaintiff concedes that the Eleventh Amendment precludes him from seeking any relief against UC and precludes him from seeking any relief other than "instatement" against the Individual Defendants in their official capacities. But Plaintiff's arguments on *Ex Parte Young*'s application to his request for "instatement" are incorrect. Because the Individual Defendants do not occupy the positions they once held and because Plaintiff's request for "instatement" would require UC to create a currently non-existent position, the *Ex Parte Young* exception does not salvage Plaintiff's claim.

Also, the Individual Defendants are entitled to qualified immunity for Plaintiff's § 1983 claim against them in their individual capacities. While Plaintiff tries to focus this Court's attention on the very general claim that a failure to hire based upon an applicant's gender is a clearly established wrong, the Supreme Court is clear that the specific factual context of the alleged wrong must be closely examined. Here, the alleged wrong—the act that actually resulted in the alleged harm to Plaintiff—is the decision to cancel the job search in question. Where Sixth Circuit law has referenced withdrawal of an offer in response to a complaint of discrimination as "exactly what [the defendant] was supposed to do," cancelling the job search here cannot have been a clearly established wrong.

Lastly, even with Plaintiff's additional allegations against Dr. Uetz, Plaintiff still fails to state a claim directly against him. Plaintiff's Amended Complaint includes no allegation about what Dr. Uetz's "judgment" or "discussions" were with Dr. Petren. And if those additional

2

allegations could support a showing that Dr. Uetz also made the alleged wrongful decision, they conflict with Plaintiff's other allegations attributing that decision only to Dr. Petren.

## I.  ARGUMENT

### A. Plaintiff's Claims Are Not Ripe Because They Are Anchored In Future Events That May Not Occur As Anticipated, Or At All.

Plaintiff argues that ripeness in the context of employment related disputes is "essentially a question of timing" and advises "against resolving a case that is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Assoc. of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir. 1997). While that is an accurate statement of the law, it does not support Plaintiff's position. Rather, it confirms that Plaintiff's claims are not ripe.

Plaintiff argues that because the decision to cancel the job search was made after he was recommended for hire, this somehow ripens his otherwise unripe failure-to-hire claims. In other words, he does not contend that he would have a ripe failure-to-hire claim had the job search been cancelled at any time prior to him being recommended for hire by the search committee. But no matter if the job search was cancelled before or after a search committee recommended Plaintiff for hire, the situation would stand in exactly the same posture in both scenarios: nobody was hired and the position remains unfilled.

Another important consideration as to the "timing" of Plaintiff's claim: what if UC would have immediately restarted another job search for that assistant professor position and allowed Plaintiff to apply? It only makes sense that his claims would not be ripe unless or until that restarted job search was concluded and someone other than Plaintiff was hired. While UC has not restarted another job search for that assistant professor position to date, this case stands in no different posture than this slightly different hypothetical.

Plaintiff is correct that ripeness is often "a question of timing." And a plaintiff's failure-to-hire claim is not ripe until the time that the employer actually makes a hiring decision and the decision is adverse to the plaintiff. That is not what happened here.

A case is also not ripe if it "is anchored in future events that may not occur as anticipated, or at all." That is what happened here. To conclude that his claims are ripe, Plaintiff asks this Court to assume that UC would ultimately hire a woman over Plaintiff if UC decided in the future to fill that assistant professor position. But such a position is "anchored in future events that may not occur as anticipated, or at all," especially where Plaintiff has not (and cannot) allege that the alleged wrongdoers (*i.e.*, the Individual Defendants) are in the same positions they held at the time the decision was made to cancel the job search. The fact is, they are not.

Dr. Theresa Culley was appointed as the Academic Unit Head for the Department of Biological Sciences effective August 15, 2018, replacing Dr. Uetz in that role. *See* https://www.uc.edu/content/dam/uc/trustees/docs/Summary%20of%20Actions/SummActions%206.19.18.pdf (last visited June 8, 2020). Dr. Valerio Ferme was appointed as the Dean of the College of Arts and Sciences effective July 1, 2019, replacing Dr. Petren in that role. https://www.uc.edu/content/dam/uc/trustees/docs/Summary%20of%20Actions/SummActions%206.25.19.pdf.[1]

Perhaps UC would hire Plaintiff if it ever posted that position again; perhaps UC would hire a different male candidate if it ever posted that position again; perhaps UC would hire a female candidate if it ever posted that position again; or perhaps UC will continue as it has since this job search was cancelled and simply not fill that assistant professorship position.

---

[1] Among other things, "a court may consider . . . public records . . . without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted). Also, "[i]n reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction . . . ." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

Regardless, this case is not ripe because it "is anchored in future events that may not occur as anticipated, or at all."

Plaintiff's response memorandum includes no case law supporting his position that a failure-to-hire claim is ripe even where the position at issue remains unfilled. Rather, he tries to distinguish Defendants' cases, but he fails to explain why the differences in those cases should result in different application of the tenet of law applied in those cases—*i.e.*, where an employment decision is not completed, a claim related to that employment decision is not ripe.

In *Herman v. Ohio University*, the Court found that the plaintiff's "§ 1983 tenure due process claims [were] not ripe . . . . [because] the de-tenuring process ha[d] begun, but [was] not yet completed." No. 2:19-CV-201, 2019 WL 6255711, at *4 (S.D. Ohio Nov. 22, 2019). The same tenet of law applies here. The process of filling that assistant professor position began, but it was not completed. And just like in *Herman*, "there is no certainty whether the challenged conduct will occur in the future." *Id*. at * 3 (quoting *Warshak v. United States*, 532 F.3d 521, 526 (6th Cir. 2008) (en banc)). In other words, there is no certainty about whom UC would hire for this assistant professor position if it seeks to fill it in the future.

Similarly, in *Morreim v. University of Tennessee*, the court held that the plaintiff's "constitutional claims based on the possible termination of her tenure are not yet ripe." No. 12-2891-STA-DKV, 2013 WL 5673619, at *12 (W.D. Tenn. Oct. 17, 2013). Again, Plaintiff offers no valid reason why this tenet of law should not apply to him here. It is just as logical that claims based on a *possible* hiring decision are not yet ripe.

Plaintiff's claims are not ripe and should be dismissed.

> **B.    Plaintiff Has Not Alleged A Cognizable Harm (*i.e.*, A Ripened Adverse Employment Action).**

The first two paragraphs of Plaintiff's response memorandum argue that he is not required to plead the *prima facie* elements of an employment discrimination claim, so his Amended Complaint should survive Defendants' Rule 12(b)(6) motion. But that argument lacks focus on the fact that an "adverse employment action," while an element of a *prima facie* discrimination claim, is still an element required to be pled because the "adverse employment action" is the supposed cognizable harm that the plaintiff is seeking to be redressed. *See, e.g., Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002) ("Because denial of this type of temporary designation is not an adverse employment action, mere interference with or delay of such a designation cannot be a cognizable harm under Title VII."); *Krinsky v. Abrams*, No. 01CV5052(SLT)(LB), 2007 WL 1541369, at *8 (E.D.N.Y. May 25, 2007), *aff'd*, 305 F. App'x 784 (2d Cir. 2009) ("Title VII contemplates discrimination on what can be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. Mediate actions, therefore, even if constituting an adverse employment action, may not lead to legally cognizable harm if by some subsequent action on the part of the employer, the employee is restored to his or her previous status.") (citation omitted).

Sure, a plaintiff need not plead the details of causation or identify the alleged comparator supposedly treated better despite being similarly situated—both elements of a *prima facie* claim— to survive a Rule 12(b)(6) motion. But pleading a legally cognizable harm or act (*i.e.*, that he suffered an adverse employment action) is a Rule 8 requirement. *See Roller v. Brennan*, No. 2:17-CV-241, 2018 WL 4405834, at *5 (S.D. Ohio Sept. 17, 2018) ("Plaintiff fails to plead any cognizable act since 2014, and even that lone alleged attempt to prevent Plaintiff's promotion resulted in no cognizable injury."); *Siegler v. Ohio State Univ.*, No. 2:11-CV-170,

27320029.1

2011 WL 4348131, at *2 (S.D. Ohio Sept. 16, 2011) (A "complaint need not plead with great precision, but it must explain why the actions of a given defendant match one of these categories of cognizable harms. Failure to provide such explanation is failure to show 'that the pleader is entitled to relief' or 'to state a claim upon which relief can be granted.'") (citing Fed. Rs. Civ. P. 8(a)(2); 12(b)(6)); *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 824 (E.D. Va. 2016) ("Because Hinton did not plead that the August and September 2013 reprimands subjected him to present or potential future adverse employment actions, he has failed to plead an injury cognizable under Title VII.").

In fact, the particular relief Plaintiff seeks here confirms that he has not alleged a cognizable harm. He asks that this Court "instate" him to the position in question. (Doc. 8 at Page ID # 37) But because that position has never been filled, nor has UC sought to fill it to date, there is no such position where this Court could even order that Plaintiff be "instated." Similarly, because the position does not exist, there would be no basis upon which to calculate any alleged back-pay or front-pay damages that Plaintiff would have been entitled to receive in the non-existent position.

Further, Plaintiff's attempts to distinguish his situation from the myriad cases cited by Defendants in their opening motion fall flat. Plaintiff is correct that Defendants rely on *Reeves v. Tennessee Farmers Mutual Insurance Co.*, 555 F. App'x 509 (6th Cir. 2014) and that the facts of that case are simple. Plaintiff is incorrect, however, that the holding in that case is materially distinguishable from his case. The holding in *Reeves* is that the company's offer of employment to someone outside the plaintiff's protected class was not a cognizable adverse employment action where that offer was rescinded. *Id*. at 511-12. UC never even got as far as making an offer to anyone—male or female—because the job search was cancelled.

And Plaintiff seems to insinuate that because the defendant in *Reeves* ultimately hired someone else in the plaintiff's same protected class (a woman)—when the job search was reopened—that is a materially distinguishing fact from his case. But why? The "harm" to the plaintiff in *Reeves* is the same even after the reopened job search—she did not get the job. So if UC reopened the job search in question and hired a male candidate other than Plaintiff, then Plaintiff would agree that *Reeves* dictates his claims be dismissed. But, as in *Reeves*, this alternative scenario would keep Plaintiff in the same position he is now—not employed with UC. It makes no sense that the holding in *Reeves* would dictate a different outcome when UC has not reopened or filled that position at all.

Similarly, Plaintiff's own description of the D.C. Circuit's decision in *Macellaro v. Goldman*, 643 F.2d 813, (D.C. Cir. 1980) supports dismissal of his claims. As Plaintiff acknowledged, the D.C. Circuit held that the plaintiff was "simply not injured" when the defendant withdrew a position that the plaintiff had applied for because that withdrawal harmed the plaintiff "no more than it did any other applicant because the job was never filled." *Id*. at 816. Plaintiff describes this holding as "no harm no foul." (Doc. 10 at Page ID # 60) While correct, that is exactly what we have here. Because UC withdrew the job search in question and did not hire any of the applicants, Plaintiff was harmed "no more than [] any other applicant."

Plaintiff attempts to distinguish the remaining cases cited in Defendants' motion by claiming that the same circumstances were not present in those cases regarding the withdrawal of the position or the cancellation of the job search. In other words, the job search was not cancelled after a complaint was lodged on alleged discrimination within the search. First, while those same facts may not be present in the other cases, the same conclusion is reached either way—where a plaintiff is asserting a failure-to-hire claim, there is no cognizable harm (*i.e.*, no

8

adverse action) where the job search is cancelled and *no one* is hired. *See, e.g., Terrell v. Paulding Cty.*, 539 F. App'x 929, 933 (11th Cir. 2013); *Abernathy v. S. Star Cent. Gas Pipeline*, No. 12-2144-EFM, 2013 WL 3013573, at *7 (D. Kan. June 17, 2013); *Thomas v. Wheeler*, No. 05-CV-1447, 2006 WL 8450236, at *4 (E.D. Pa. June 20, 2006), *aff'd*, 295 F. App'x 537 (3d Cir. 2008); *Koger v. Robert Half Int'l*, No. 2:05CV850, 2007 WL 712225, at *9 (W.D. Pa. Mar. 7, 2007), *aff'd*, 247 F. App'x 349 (3d Cir. 2007) ("Pepper Hamilton withdrew the order for placement before Robert Half Legal was able to put any candidate in the position. Consequently, defendants could not have engaged in any adverse action against plaintiff with regard to the sole employment opportunity plaintiff has placed at issue."); *Zolotarevsky v. Gen. Elec. Co.*, 862 F. Supp. 659, 663 (D. Mass. 1994) ("Zolotarevsky has failed to establish that the position for which he applied at GE's Rutland, Vermont facility remained open after his rejection. Zolotarevsky has, therefore, failed to establish a *prima facie* case of discrimination.").

Second, those *are* the facts seen in the Sixth Circuit's decision in *Reeves*. There, an offer was made to a male applicant, the plaintiff complained that the offer to him was discriminatory, and the defendant rescinded that offer, reopened the job search, and ultimately hired a different female applicant. 555 F. App'x at 510-11. Noting that a court's "inquiry is practical, not metaphysical," the Sixth Circuit agreed that the plaintiff's claims failed as a matter of law because the plaintiff could show no ripened adverse employment action. *Id.* at 512. That is the same situation here. Plaintiff has alleged no cognizable harm (*i.e.*, no ripened adverse employment action) because UC cancelled the job search and did not hire anyone for the position.

Plaintiff is correct that he did not get the job at issue, but neither did anyone else. The job search was cancelled and, to date, has not been reopened. Plaintiff has failed to state a claim

9

upon which relief can be granted because he has not alleged a cognizable harm (*i.e.*, a ripened adverse employment action).

### C. The *Ex Parte Young* Doctrine Does Not Salvage Plaintiff's § 1983 Claim Against the Individual Defendants.

Plaintiff responds to Defendants' raising Eleventh Amendment immunity to his 42 U.S.C. § 1983 claim by expressly limiting that claim against the Individual Defendants to his request to be "instated" to the position he had sought. (Doc. 10 at Page ID # 63-64) So, at the very least, Plaintiff concedes that his § 1983 claim against the Individual Defendants does not include a claim for any monetary damages. *Id.*

But even Plaintiff's limitation to only "instatement" does not salvage his § 1983 claim. First, as mentioned above, Dr. Petren is no longer the Dean of the College of Arts and Sciences and Dr. Uetz is no longer the "Chair" (*i.e.*, Academic Unit Head) of the Department of Biological Sciences. So neither of them could provide Plaintiff's requested "instatement" remedy in the first place. *See Taaffe v. Drake*, No. 2:15-CV-2870, 2016 WL 1713550, at *5 (S.D. Ohio Apr. 29, 2016) ("The proper defendants in such an action are the ones who have the power to provide the relief sought.").

Second, Plaintiff's claim is not for "reinstatement" because there is *no position* for him to be "reinstated," nor has he ever held a position at UC. Rather, his request for "instatement" is actually a request that the Court order the Individual Defendants to create a position that does not exist, and then provide that position to Plaintiff. Whether a request for "instatement" falls within the *Ex Parte Young* exception "is a close question to which neither the Supreme Court nor any of the circuits provides a clear answer." *Smith v. Sec'y of Dep't of Envtl. Prot. of Penn.*, 540 F. App'x 80, 82 (3d Cir. 2013).

But here, with no position for this Court to order Plaintiff to be "instated," it is not a "close question." Plaintiff's request for "instatement" is not one for injunctive relief. Rather, "instatement" would require creating a position that does not exist. In other words, it would compel UC—not the Individual Defendants—to expend resources not currently in use by creating a position and placing Plaintiff in it. "[A] suit nominally directed at an officer, but seeking judicial 'compulsion against the sovereign,' is barred." *TransAmerica Assur. Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 260 (6th Cir. 2007) (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949)); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (Put another way, relief sought "nominally against an officer is in fact against the sovereign if the decree would operate against the latter.").

Plaintiff's claims against both Individual Defendants in their official capacities are barred by Eleventh Amendment immunity.

### D. Plaintiff Must Be Able To Show It Was Clearly Established That Cancelling A Job Search Was A Cognizable, Wrongful Act.

Plaintiff admits he "is not alleging that it was clearly established that cancelling a job search constitutes a stand-alone act of discrimination." (Doc. 10 at Page ID # 65) Because he must show that to defeat the Individual Defendants' claim of qualified immunity, Plaintiff's § 1983 claim against the Individual Defendants in their individual capacities must be dismissed.

Plaintiff's response memorandum shifts focus away from the actual act that caused the alleged harm of which Plaintiff complains. Instead, Plaintiff cites the uncontroversial position that failing to hire someone because of his/her gender is a clearly established wrong. (Doc. 10 at Page ID # 65-66) But engaging in such a "high level of generality," rather than a "high level of specificity," when examining whether "it is clear to a reasonable offic[ial] that his conduct was

11

unlawful in the situation he confronted" is exactly what the Supreme Court said was improper in *District of Columbia v. Wesby*, 583 U.S. ——, 138 S. Ct. 577, 590 (2018).

According to Plaintiff's allegations, the specific situation that the Individual Defendants confronted was a job search that came down to three candidates, two females and one male, with a recommendation from the search committee to hire the male candidate. After the committee gave its recommendation, Dr. Petren advised that the search should focus on the women candidates. (Doc. 8 at Page ID 35) The chair of the search committee expressed her position that this was against the committee's recommendation and was discriminatory. (*Id.*) Dr. Petren advised the chair of the search committee that there were other problems with the search, namely the fact that the chair of the search committee had collaborated with the Plaintiff. (*Id.* at Page ID 35-36) So Dr. Petren decided that it was not possible to complete an equitable search under the circumstances, and he cancelled it. (*Id.* at Page ID 36)

As discussed, this case is very similar to the Sixth Circuit's *Reeves* decision. There, far from concluding that the defendant's decision to withdraw an allegedly discriminatory job offer to a male candidate was clearly unlawful conduct, the Sixth Circuit stated that the defendant's withdrawal of the offer was "exactly what it was supposed to do." *Reeves*, 555 F. App'x at 512. The "crucial question" of the qualified immunity analysis is "whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S.Ct. at 590. Cancelling the job search in question was a reasonable act given the particular circumstances alleged by Plaintiff. The Individual Defendants are entitled to qualified immunity.

### E. Plaintiff's Allegations Against Dr. Uetz Are Vague And Conflict With Other Allegations.

Plaintiff asserts that his allegations in paragraph 22 of his Amended Complaint are sufficient to state a claim against Dr. Uetz in his individual capacity. Plaintiff asserts that Dr.

12

Uetz's reference to his "own judgment and extensive discussions with the dean" and his reference to having "agreed with the ultimate hiring decisions we made" are sufficient to state a claim that Dr. Uetz engaged in wrongful conduct. First, there is no allegation about what Dr. Uetz's "judgement" or his "discussions" with Dr. Petren entailed. Second, Dr. Uetz having "agreed with the ultimate hiring decision" is different from alleging that Dr. Uetz made (or even influenced) the decision. Third, reference to the decision "we made" in paragraph 22 conflicts with the paragraph preceding it where the allegations of "focus[ing] on the women candidates" is only attributed to Dr. Petren. Plaintiff's § 1983 claim against Dr. Uetz in his individual capacity should be dismissed.

## II. CONCLUSION

For all these reasons, Defendants request that this Court dismiss all claims alleged against them under Federal Rule of Civil Procedure 12.

    Respectfully submitted,

    DAVE YOST
    Attorney General of Ohio

    By: /s/ Brian G. Dershaw
        Brian G. Dershaw (0072589)
        Evan T. Priestle (0089889)
        Taft Stettinius & Hollister LLP
        425 Walnut Street, Suite 1800
        Cincinnati, OH 45202
        Tel: (513) 381-2838
        Fax: (513) 381-0205
        bdershaw@taftlaw.com
        epriestle@taftlaw.com

        *Attorneys for Defendants*
        *University of Cincinnati, Kenneth*
        *Petren, and George Uetz*

CERTIFICATE OF SERVICE

    I certify that on June 12, 2020, I filed the Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered parties.

                                    /s/ Brian G. Dershaw

27320029.1