# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| MARK CHARLTON-PERKINS, | : | Case No. 1:20-cv-179 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| UNIVERSITY OF CINCINNATI, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER: (1) GRANTING MOTION TO DISMISS (Doc. 9); and
(2) DISMISSING CASE WITHOUT PREJUDICE**

This civil case is before the Court on Defendants University of Cincinnati, Kenneth Petron, and George Uetz's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 9), and the parties responsive memoranda (Docs. 10, 11).[1]

## I. FACTS AS ALLEGED BY PLAINTIFF

Plaintiff Mark Charlton-Perkins, Ph.D. is a United States citizen employed with the University of Cambridge in the United Kingdom. (Doc. 1 at ¶ 1).

In September 2017, Defendant University of Cincinnati's Department of Biological Sciences determined it needed to appoint an Assistant Professor. (*Id.* at ¶ 14). A committee, consisting of four faculty members and one non-voting graduate student, was placed in charge of the search to fill the position. (*Id.*) Dr. Elke Buschbeck was appointed chair of the committee. (*Id.*)

---

[1] Also pending is Defendants' first-filed motion to dismiss. (Doc. 7). Plaintiff filed an amended complaint in response to that motion. Accordingly, that motion (Doc. 7) is **DENIED as moot**.

The search committee was established in accordance with a Collective Bargaining Agreement between the "AAUP," on behalf of the faculty, and UC. (*Id*. at ¶ 19). According to Dr. Charlton-Perkins, the CBA "provided, in pertinent part, that 'the appointment of a Faculty Member to an Academic Unit shall normally be based on a recommendation initiated within and approved by the Faculty of that Academic Unit using procedures developed within that Academic Unit.'" (*Id*.)[2]

The search committee then established the procedures to fill the position to ensure compliance with equal employment policies. (*Id*. at ¶ 15). The search committee received 62 applications. (*Id*. at ¶ 16). The applications were refined down to nine candidates based on ratings, and those candidates were invited to participate in Skype interviews. (*Id*.)

Dr. Charlton-Perkins was one of those candidates. (*Id*. at ¶ 17). Dr. Charlton-Perkins and committee-chair Dr. Buschbeck had collaborated on projects in the past. (*Id*. ¶ 17). Dr. Buschbeck disclosed the relationship to the committee and Dr. Marylin Kershaw, Director of the Office of Diversity and Access and the Superintendent of Graduate Student Recruitment of the McMicken College of Arts and Sciences. (*Id*.) Dr. Kershaw assured Dr. Buschbeck there was no conflict of interest and she could proceed with interviewing Dr. Charlton-Perkins. (*Id*.)

---

[2] Plaintiff does not define AAUP; however, the Court presumes that Plaintiff is referring to the "American Association of University Professors." Plaintiff also does not attach or provide the CBA; however, for purposes of this Order, the Court considers the pertinent part as quoted by Plaintiff to be an accurate representation of the CBA.

Defendant Dr. Uetz then authorized the committee to invite five finalists for on-campus interviews. (*Id*. at ¶ 18). Three of the five finalists were female; however, one declined the invitation to interview. (*Id*.) Two were male, including Dr. Charlton-Perkins. (*Id*.) After the four interviews, the search committee ranked the candidates. The four candidates were narrowed to three, Dr. Charlton-Perkins and two females. (*Id*.)

On February 23, 2018, the committee took a final vote, during which Dr. Charlton-Perkins was rated the favorite by a vote of three to one. (*Id*. at ¶ 19). Following the vote, Dr. Buschbeck informed Dr. Uetz of the committee's recommendation to hire Dr. Charlton-Perkins and that the other two female candidates were equally ranked second. (*Id*. at ¶ 20). At that meeting, Dr. Uetz informed Dr. Buschbeck that Defendant Dean Petron had decided to hire not only one, but two candidates. (*Id*.)

On March 4, 2018, Dr. Uetz also explained to the committee that Dean Petron recommended that the committee focus on the female candidates first and that Dean Petron felt he could make a case to hire the two female candidates. (*Id*. at ¶ 21). Dr. Buschbeck responded that "putting the two lower ranked candidates up first is not only against the recommendation of the committee but also plain discrimination." (*Id*.)

On March 8, 2018, Dean Petron informed Dr. Buschbeck that the search was tainted by her past relationship with Dr. Charlton-Perkins. (*Id*. at ¶ 22). Dr. Buschbeck told Dean Petron that the relationship was both disclosed and that she was approved by Dr. Kershaw to continue the search. (*Id*.) On March 13, 2018, Dean Petron cancelled the search, thinking it was not possible for the committee to complete an equitable search. (*Id*.) There is no allegation that the position was ever re-posted or filled.

3

As pled, Dr. Charlton-Perkins asserts two claims: (1) discrimination in violation of Title IX against UC, (*id*. at ¶¶ 28–29); and (2) gender-based discrimination in violation of the Equal Protection Clause against Dr. Uetz and Dean Petron, (*id*. at ¶¶ 30–31). Defendants move to dismiss the complaint in its entirety. (Doc. 9).

## II. STANDARDS OF REVIEW

Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. Lack of Jurisdiction

Under Federal Rule of Civil Procedure (12)(b)(1), a court may dismiss a case for lack of subject matter jurisdiction. The doctrine of ripeness is a jurisdictional limitation on federal courts. *Golf Vill. N., LLC v. City of Powell, Ohio*, 338 F. Supp. 3d 700, 705 (S.D. Ohio 2018). Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id*. "When reviewing a facial attack, a district court takes the allegations in the complaint as true," and construes them in the light most favorable to the nonmoving

4

party, a safeguard similar to that employed under Federal Rule of Civil Procedure 12(b)(6). *Id.*; *see also United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "If those allegations establish federal claims, jurisdiction exists." *Gentek Bldg. Prods.*, 491 F.3d at 330. A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Ritchie*, 15 F.3d at 598. "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

In their motion, Defendants consider Dr. Charlton-Perkins' allegations as true for purposes of jurisdiction. (Doc. 9). Thus, Defendants assert a facial attack.

### B. Failure to State a Claim

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,'…it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a

legal conclusion couched as a factual allegation'[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " and the Complaint shall be dismissed. *Id*. (citing Fed. R. Civ. P. 8(a) (2)).

## III. ANALYSIS

Defendants contend that both of Dr. Charlton-Perkins' claims should be dismissed because the claims are not ripe. As discussed, the Court agrees.

"The Constitution does not extend the 'judicial power' to any legal question, wherever and however presented." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008). Rather, "Article III…limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). When a claim is brought too early, it is considered unripe for adjudication. *Warshak*, 532 F.3d at 525.

6

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–581 (1985)). "The ripeness doctrine serves to 'avoid[ ]…premature adjudication' of legal questions and to prevent courts from 'entangling themselves in abstract' debates that may turn out differently in different settings." *Warshak*, 532 F.3d at 525 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)). "Answering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation." *Warshak*, 532 F.3d at 526.

In assessing whether a claim is ripe for decision, the Court must consider: (1) the fitness of the issue for judicial review, *i.e.*, whether "it arises in a concrete factual context and concerns a dispute that is likely to come to pass;" and (2) the hardship imposed upon the parties should the Court withhold its consideration of the issue. *Warshak*, 532 F.3d at 525-26 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Here, the issue is whether Dr. Charlton-Perkins' claims are ripe when the search for the position was cancelled and the position never filled. Defendants argue that claims based on an employment decision cannot be ripe until the decision is complete. (Doc. 9 at 3–4). And, in this case, because no one was ever hired and the search cancelled, Dr. Charlton-Perkins' claims based on Defendants' failure to hire him cannot be ripe. (*Id.*)

Dr. Charlton-Perkins contends that his claims are ripe and not contingent on future events because he has "already suffered a discrete and completed act of discrimination

7

when Defendants refused to accept the recommendation of the search committee and failed to hire him on account of his gender." (Doc. 10 at 4–5). Dr. Charlton-Perkins also argues that Defendants violated the CBA by not following the recommendation of the search committee, because, in accordance with the CBA, the search committee was "vested with the authority to determine the candidate to be selected for the position." (Doc. 8 at ¶ 19; Doc. 10 at 11). In response to this harm, Dr. Charlton-Perkins seeks, among other forms of relief:

> A judgment for equitable and injunctive relief directing Defendants, their successors and assigns to instate Dr. Charlton-Perkins into an assistant research professorship in the Biological Sciences Department with the pay, benefits, and promotional opportunities he would have received had he not been denied the position to which he was entitled; or, in the alternative, that he be awarded front pay in an appropriate amount to compensate him for his injuries.

(Doc. 8 at Prayer for Relief, ¶ 1).

The Court finds that Dr. Charlton-Perkins' claims are not ripe. Dr. Charlton-Perkins' claims, based in gender discrimination, are not concrete; the claims are dependent on a future event – Defendants hiring a female candidate instead of him. That has not yet happened, the Court does not know if that will happen, and there is no case or controversy yet presented. Moreover, Dr. Charlton-Perkins' requested forms of relief support this conclusion. He could not be awarded equitable relief and instated into a position that does not exist.

Dr. Charlton-Perkins' argument that Defendants were required to hire someone following the search committee's recommendation, thus he suffered a discrete harm, is

8

also not well-taken. First, even considering Dr. Charlton-Perkins' quoted portion of the CBA as true, the CBA provides that "the appointment of a Faculty Member to an Academic Unit shall <u>normally</u> be based on a recommendation." (Doc. 8 at ¶ 19 (emphasis added)). A plain reading of this provision suggests that a position should <u>normally</u>, not always, be filled based on such a recommendation. And, to the extent Dr. Charlton-Perkins' claim is based on any alleged breach of the CBA, the Court is unaware based on the pleadings whether Dr. Charlton-Perkins may even enforce the CBA. All this is said because the uncertainty of such a claim shows the non-concrete nature of Dr. Charlton-Perkins' claims.

The un-ripe nature of Dr. Charlton-Perkins' claims is further demonstrated by his inability to plead the essential elements of his claims. Dr. Charlton-Perkins "may prove gender discrimination using direct or circumstantial evidence." *Reeves v. Tennessee Farmers Mut. Ins. Co.*, 555 F. App'x 509, 511 (6th Cir. 2014) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000)). "Direct evidence 'requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Id*. (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). Here, Dr. Charlton-Perkins' does not argue that the allegations in his complaint are direct evidence, but "if true, allow for the inference of discrimination." (Doc. 10 at 11).

Thus, Dr. Charlton-Perkins "may also prove gender discrimination using circumstantial evidence under the *McDonnell Douglas* burden-shifting framework." *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). Dr. Charlton-

9

Perkins must first adequately plead a prima facie case that he was denied the position based on gender discrimination. *Id*. To do so, he must plausibly allege that: (1) he is a member of a protected class; (2) he applied for and was qualified for a position; (3) he was denied the position; and (4) an individual of similar qualifications who was not a member of his class received the job. *Id.*

The fourth element may be satisfied when the plaintiff pleads that an employer treated similarly situated, non-protected employees more favorably than the plaintiff. *Hertenstein v. W.-S. Fin. Grp.*, No. 1:06-CV-273, 2007 WL 4365412, at *6 (S.D. Ohio Dec. 11, 2007) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Moreover, in a reverse discrimination case such as this, "in order to satisfy the first prong of the prima facie case, the plaintiff must demonstrate background circumstances which support the suspicion that the defendant is the rare employer who discriminates against the majority." *Id*. (citing *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir.2003))

Because Dr. Charlton-Perkins' claims are not ripe, he cannot adequately plead his prima facie case. Dr. Charlton-Perkins does not dispute that no candidate was hired. It cannot be said that he was treated differently than similarly situated candidates when all candidates, including the two females who participated in on-campus interviews, were denied the position when Defendants pulled the search. All the candidates were treated the same; all the candidates were denied the position.

Dr. Charlton-Perkins' claims are not ripe, and his claims rest on a future, unknown event. Moreover, other courts have reached a similar result that an employment

case is not ripe until the employment action is complete. *See, e.g., Herman v. Ohio Univ.*, No. 2:19-CV-201, 2019 WL 6255711, at *4 (S.D. Ohio Nov. 22, 2019) (claims based on de-tenuring not ripe until de-tenuring process complete); *Morreim v. Univ. of Tennessee*, No. 12-2891-STA-DKV, 2013 WL 5673619, at *12 (W.D. Tenn. Oct. 17, 2013) (claims based on possible termination of tenure not ripe). *Cf. Reeves*, 555 F. App'x at 512 (plaintiff could not establish essential elements of employment discrimination claim when material employment action – hiring, firing, or promoting – did not occur); *Terrell v. Paulding Cty.*, 539 F. App'x 929, 933 (11th Cir. 2013) (no adverse employment action when position never filled).[3]

Accordingly, Dr. Charlton-Perkins' claims are not ripe, and this Court lacks jurisdiction. Because Dr. Charlton-Perkins' claims are not ripe, his complaint is dismissed <u>without prejudice</u>.

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss (Doc. 9) is **GRANTED**. Plaintiff's complaint is **DISMISSED <u>without prejudice</u>**. The Clerk shall enter judgment accordingly, whereupon this action is **TERMINATED** upon the docket of this Court.

**IT IS SO ORDERED.**

Date: 8/24/2021

*s/Timothy S. Black*
Timothy S. Black
United States District Judge

---

[3] The Court need not discuss Defendants' motion to the extent it seeks dismissal based on 12(b)(6) and asserted immunity since the Court lacks jurisdiction.